OM-EL EXPORT COMPANY, INC v NEWCOR, INC

Docket No. 78666. Submitted March 5, 1986, at Lansing. Decided September 9, 1986. Leave to appeal denied, 426 Mich 878.

Plaintiffs, Om-El Export Company, Inc., and its sole owner, Fernando Leon, brought an action in the Bay Circuit Court against defendant, Newcor, Inc. Om-El sought damages for breach of a sales representative contract while Leon individually sought compensation for a market and plant study conducted prior to the execution of any sales representative contract between Om-El and the defendant. The trial court, Eugene C. Penzien, J., granted defendant an accelerated judgment on Leon's claim and an appeal has not been taken from that order. The trial court also found that defendant breached its contractual duties to Om-El resulting in damages of $606,147.76, plus interest, to Om-El only. Part of that award, $90,234.76, for commissions earned prior to and within six months after the termination of the contract, was satisfied following entry of the judgment. Defendant appeals from the part of the damage award representing $500,000 for future commissions and the computation of interest on the award.

The Court of Appeals *held:*

1. The trial court did not err in finding that it was unreasonable to require Om-El to mitigate damages by developing new foreign markets for other companies. The evidence is sufficient to support the trial court's finding that any attempt by Om-El to develope a similar venture would have required operating at a loss for several years and thus did not represent a reasonable step by which Om-El could have mitigated damages. The defendant failed to carry its burden of proof with regard to the mitigation issue.

2. The trial court did not err when it failed to deduct from the future commission damages the amount of money that Om-

REFERENCECS
Am Jur 2d, Contracts §§ 294, 365, 425-430, 441-447, 521.
Action for breach of contract as basis of action for malicious prosecution or abuse of process. 87 ALR3d 580.
See also the annotations in the Index to Annotations under Contracts.

El would have paid to Leon in the form of a salary during the years remaining on the contract after termination. The trial court did not err in relying upon general principles of fairness in looking beyond Om-El's corporate structure and determining that the contract clearly contemplated the personal services of Leon.

3. The trial court did not err in awarding plaintiff interest from the date that the complaint was filed on that portion of the damages award representing future commissions. The Court of Appeals also noted that there is a conflict between different panels of the Court on this issue and thus certified this case for conflicts resolution pursuant to Administrative Order No. 1984-2, 418 Mich lxxxii (1984).

4. The trial court's application of the exchange rate of .034 in the conversion of Belgian francs into American dollars, as to that portion of the future commissions which would have been earned in Belgium, was not erroneous. The application of the exchange rate prevailing at the time of the breach was not error given the circumstances of this case.

5. The trial court's award of future commission damages was neither speculative nor excessive, was justified by the facts and was within the range of the evidence produced at trial.

Affirmed.

1. DAMAGES — MITIGATION OF DAMAGES — TORTS — BREACH OF CONTRACTS.

Plaintiffs in tort and breach of contract actions have the duty to take reasonable steps to minimize any damages suffered as a result of a defendant's wrongful breach; it is the burden of the defendant at trial to prove that the plaintiff has failed to take some reasonable step in mitigation.

2. CONTRACTS — BREACH OF CONTRACTS — DAMAGES.

The purpose of awarding damages in a breach of contract action is to place the injured party in as good a position as would have been enjoyed had the contract been fully performed.

3. CONTRACTS — BREACH OF CONTRACTS — DAMAGES — SALES COMMISSIONS.

The measure of damages for loss of profits resulting from the breach of a contract involving sales commissions is gross commissions less expenses that would have been incurred but for the breach.

4. CORPORATIONS — PIERCING THE CORPORATE VEIL.

There is no simple or easy rule for determining when a corporate

entity may be disregarded; the decision must be made in light of the entire spectrum of relevant facts underlying the particular case and rests on notions of equity, whether it is an action at law or in equity; one justification for looking beyond a corporate entity is to avoid an injustice or, conversely, to accomplish a just result.

5. DAMAGES — PREJUDGMENT INTEREST — FUTURE DAMAGES.

The prejudgment interest statute allows interest on a money damages award, including an award involving future damages, from the date of the filing of the complaint (MCL 600.6013; MSA 27A.6013).

*Smith & Brooker, P.C.* (by *Harry P. Gill, Carl H. Smith, Jr.,* and *Glenn F. Doyle*), for plaintiffs.

*Miller, Canfield, Paddock & Stone* (by *Carl H. von Ende* and *Leland D. Barringer*), for defendant.

Before: SHEPHERD, P.J., and M. J. KELLY and R. L. TAHVONEN,* JJ.

M. J. KELLY, J. This is an action for breach of contract. Following thirty days of trial, the court delivered an opinion from the bench finding that defendant had breached its contractual duties to plaintiff Om-El Export Company, Inc., resulting in damages of $606,147.76, plus interest. On appeal, defendant does not challenge the trial court's finding that defendant's conduct constituted a breach of contract. Rather, defendant appeals from part of the damages award and the computation of interest on the award. We affirm.

The contractual relationship between Om-El and defendant began in 1967. At that time, defendant was engaged in the business of manufacturing heavy industrial machinery but had no significant export market. Fernando Leon approached defendant and negotiated an agreement on behalf of his

---

* Circuit judge, sitting on the Court of Appeals by assignment.

solely-owned corporation, Om-El, whereby Om-El would work exclusively as defendant's market representative in all areas of the world except the United States, Canada, Japan, Ryukyu, North and South Korea, Southeast Asia, The Republic of China, North Vietnam and Cuba. Initially, Om-El's relationship with defendant was governed by a series of one-year contracts which were automatically renewed on the expiration date. Either party could have prevented renewal of any one of the one-year contracts. In June of 1972, the parties entered into a five-year contract with an expiration date of May 31, 1977. A second five-year contract was entered into on September 21, 1977, but was made retroactive to June 1, 1977. Both five-year contracts provided for cancellation upon Fernando Leon's death or disability or upon failure of Om-El to achieve certain minimum sales goals.

Although Fernando Leon is a plaintiff in this action, individually, he was never a party to any of the contracts entered into between Om-El and defendant. Leon claimed compensation for a market and plant study conducted prior to the execution of any sales representative contract. The trial court granted defendant an accelerated judgment on this claim and plaintiffs did not appeal from that order. Since Leon was not a party to the contract upon which this action is based, the trial court awarded damages to Om-El only (hereinafter referred to as plaintiff).

Because defendant does not challenge the trial court's finding that it had breached its contractual obligations to plaintiff, we find it unnecessary to recount the details of that breach. Suffice it to say that defendant terminated the contract in February of 1979, alleging that plaintiff had failed to meet its minimum sales goals for the 1977-1978

contract year. The trial court concluded that plaintiff had in fact substantially met the goals for the year in question and that, based on the language and terms of the contract, the circumstances underlying the contract negotiations and the intent of the parties, defendant was not justified in terminating the contract on the facts presented.

The trial court awarded the following damages to Om-El:

$500,000 for future commissions which Om-El would have earned in the years remaining on the contract but for defendant's breach;

$90,234.76 for commissions Om-El earned prior to the termination of the contract and within six months thereafter, as provided in the contract;

$13,886 for commissions Om-El had earned but defendant refused to pay for the reason that defendant had discounted the price of the equipment to certain customers in response to their complaints; and

$2,027 for monies defendant owed Om-El on a "debit-credit" account the parties maintained in Belgium.

The parties indicated at appellate oral argument that the award of $90,234.76 for commissions earned prior to and within six months after the termination of the contract was satified following entry of the judgment. Thus, defendant's arguments on appeal relate primarily to the award of $500,000 for future commissions.

Defendant first contends that the trial court clearly erred in finding that plaintiff was not obligated to minimize its future damages during the three years between defendant's termination and the 1982 expiration date by developing new export markets for other manufacturers of heavy industrial equipment. Defendant's witness identi-

fied a number of companies which plaintiff could have solicited for business with successful and profitable results. The witness further identified other representatives of defendant who had left defendant's employ and gone on to successfully represent competitor companies. Both at trial and on appeal, defendant analogizes plaintiff's position to that of a wrongfully discharged employee and argues that plaintiff was required to make every reasonable effort to obtain employment of a like nature. *Brewster v Martin Marietta Aluminum Sales, Inc,* 145 Mich App 641, 663; 378 NW2d 558 (1985). Defendant argues that plaintiff's failure to contact even one of the twenty or so competitors identified by defendant should preclude plaintiff from fully recovering the future commissions that plaintiff would have earned in the absence of defendant's breach. We do not agree.

The trial court concluded that it was unreasonable to require plaintiff to mitigate damages by developing new foreign markets for other companies. First, Fernando Leon testified that the process of establishing export markets necessarily involves a number of years of high expenditures and low earnings. In order for Om-El to have developed another export market, Leon opined that it required enough capital to be able to operate at a loss for from three to five years. The trial court noted that defendant, at the time of its breach, withheld approximately $90,000 in commissions already earned by Om-El, fully aware that the commissions were owed. Plaintiff was thus prevented from using those funds to finance any other project. The trial court also considered the fact that the operative force behind the corporate plaintiff, Fernando Leon, was nearly sixty years of age at the time defendant terminated the

contract and had suffered a major heart attack in 1977.

Defendant argues that these findings are not supported by the evidence. Our review of the testimony convinces us otherwise. Fernando Leon specifically testified that he considered the prospect of approaching another manufacturer for the purpose of developing an export market but concluded that it would take from three to five years before Om-El would make any money and would require the expenditure of sums of money which would not be recouped until years after the arrangement was in place. Leon based his conclusions on his experience with defendant, and on a previous experience in New York with a similar venture. An exhibit introduced at trial reveals that Om-El did not experience a corporate profit until the sixth year of its contractual relationship with defendant and that Leon did not receive a salary until the fourth year. We find this evidence sufficient to support the trial court's finding that any attempt by plaintiff to develop a similar venture would have required operating at a loss for several years and thus did not represent a reasonable step by which plaintiff could have mitigated damages.

There is no dispute that plaintiffs in tort and breach of contract actions have the duty to take reasonable steps to minimize any damages suffered as a result of a defendant's wrongful breach. For purposes of trial, however, it is the burden of the defendant to prove that plaintiff has failed to take some reasonable step in mitigation. *Reinardy v Bruzzese,* 368 Mich 688, 691; 118 NW2d 952 (1962); *Froling v Bischoff,* 73 Mich App 496, 499-500; 252 NW2d 832 (1977). It was the trial court's opinion, and we agree, that defendant in this case failed to carry its burden of proof with regard to the mitiga-

tion issue. We find defendant's analogy to the wrongfully-discharged employee inapposite given the element of risk necessarily involved with the development of a new export market venture. We affirm the trial court's finding on the issue of mitigation.

Defendant's second argument presents a closer question. Defendant claims error in the trial court's failure to deduct from future commission damages the amount of money that Om-El would have paid to Fernando Leon in the form of a salary during the years remaining on the contract after termination. Since Om-El's sole corporate activities revolved around defendant's market, there was no need for Om-El to expend corporate funds on employee salaries after defendant had breached the contract. Defendant asserts that Leon would have earned an annual salary of $50,-000 for each of the three years remaining on the contract. Defendant thus contends that the award of $500,000 for future lost commissions should be reduced by $150,000.

Defendant correctly cites the applicable principles of law in support of its argument. The purpose of awarding damages in a breach of contract action is to place the injured party in as good a position as would have been enjoyed had the contract been fully performed. *Davidson v General Motors Corp,* 119 Mich App 730, 733; 326 NW2d 625 (1982), *Davidson v General Motors Corp (On Rehearing),* 136 Mich App 203; 357 NW2d 59 (1984). Where the contract is one involving sales commissions, the measure of damages for loss of profits is gross commissions less expenses that would have been incurred but for the breach. *Benfield v H K Porter Co, Inc,* 1 Mich App 543, 546; 137 NW2d 273 (1965); *Callender v Myers Regulator Co,* 250 Mich 298; 230 NW 154 (1930).

See also *Lawton v Gorman Furniture Corp,* 90 Mich App 258, 267; 282 NW2d 797 (1979), and *Davidson, supra,* p 734. Defendant reasons that since net profit is the appropriate measure of damages and since Om-El's net profits constitute gross commissions minus expenditures, it was incumbent upon the trial court to deduct Leon's salary as a corporate expenditure that would have been but was not incurred because of the defendant's breach.

The trial court rejected defendant's argument and, although the court reduced Om-El's gross commissions by other expenditures that would have been incurred in carrying out the terms of the contract, the court did not reduce the gross commissions by the amount of Leon's salary. Essentially, the trial court looked beyond the corporate entity and reasoned that although the contract was between defendant and Om-El and not Fernando Leon, the contract clearly contemplated the personal services of Leon, as evidenced by the contract provision justifying defendant's termination in the event of Leon's death or disability. Om-El was wholly owned by Leon and, as previously noted by the trial court, Leon was Om-El's only real asset. The court characterized Om-El as "Mr. Leon's alter-ego" and concluded that to deprive the plaintiff of $150,000 in lost commissions would result in a windfall for defendant not contemplated by the law.

As recently noted by this Court, there is no simple or easy rule for determining when a corporate entity may be disregarded. *Papo v Aglo Restaurants of San Jose, Inc,* 149 Mich App 285, 301; 386 NW2d 177 (1986). Such a decision must be made in light of "[t]he entire spectrum of relevant fact[s]" underlying a particular case, *Klager v Robert Meyer Co,* 415 Mich 402, 411; 329 NW2d

721 (1982), and "rests on notions of equity, whether it is an action at law or at [sic] equity." *Kline v Kline,* 104 Mich App 700, 703; 305 NW2d 297 (1981). One justification for looking beyond a corporate entity is to avoid an injustice or, conversely, to accomplish a just result. *Id.,* pp 702-703, citing *Schusterman v MESC,* 336 Mich 246; 57 NW2d 869 (1953), and *L A Walden & Co v Consolidated Underwriters,* 316 Mich 341, 346; 25 NW2d 248 (1946).

In this case, the trial court relied upon general principles of fairness in looking beyond the corporate structure of Om-El. Upon our de novo review of the facts we are not persuaded that we would have been compelled to find otherwise had we been sitting as the trier of fact. This is a close question and we surmise that reasonable minds might disagree on the appropriateness of disregarding the corporate structure under these facts. Since the trial court here had a special opportunity to view the witnesses in an unusually lengthy trial, we will defer to that court's findings and conclusions. We further note that in *Davidson (On Rehearing), supra,* p 207, a panel of this Court held that under the circumstances of a case such as this, a sole shareholder plaintiff was "entitled to damages based on all benefits [not just lost salary] which would have flowed to him through the corporate form absent defendant's breach of contract."

Defendant's remaining arguments are without merit. Defendant argues that the trial court erred in awarding plaintiff interest from the date the complaint was filed on that portion of the damages award representing future commissions. We do not agree. In *Goins v Ford Motor Co,* 131 Mich App 185, 201-203; 347 NW2d 184 (1983), lv gtd, 422 Mich 857 (1985), order granting lv vacated and lv

den, 424 Mich 879 (1986), this Court addressed and rejected a similar argument in the context of a wrongful discharge action. Plaintiff in that case was awarded future lost wages and defendant argued that interest should accrue on future wages only from the date those wages became payable and not from the date of the filing of the complaint. This Court rejected defendant's argument holding that MCL 600.6013; MSA 27A.6013 was unambiguous on its face and expressly provided for the assessment of interest "from the date of filing the complaint." The Court further noted that the purpose of awarding prejudgment interest is not only to compensate for the delay in receiving money but to compensate for the expenses and inconveniences involved in litigation. We agree that a straightforward interpretation of the prejudgment interest statute allows interest on a money damages award from the date of the filing of the complaint. Had the Legislature intended to provide differently in the case of awards involving future damages, it could easily have done so by express provision in the statute.

A recent decision of the Supreme Court tends to support a straightforward interpretation of the prejudgment interest statute. Although not directly presented with the issue now before us, a majority of the justices on the Supreme Court generally held that prejudgment interest "commences to accrue, and therefore should be calculated, from the date of the filing of the complaint upon the defendant against whom the judgment has been entered." *Rittenhouse v Erhart,* 424 Mich 166, 218; 380 NW2d 440 (1985). There, the issue was whether interest should commence running from the date the original complaint was filed rather than from the filing date of the amended complaint which named for the first time the

defendant against whom the judgment was obtained. The only defendant named in the original complaint had been dismissed for no cause of action.

Defendant relies upon *Foremost Life Ins Co v Waters (On Remand)*, 125 Mich App 799; 337 NW2d 29 (1983), for the rule that interest on future damages should not commence until the damages accrue. As it did in *Goins, supra,* however, the situation presented in *Foremost* differs significantly from that presented here. In *Foremost,* plaintiff filed a declaratory action rather than an action for money damages. During the pendency of that action, defendant settled her claim with a third-party tortfeasor, turning plaintiff's declaratory action into an action for reimbursement of insurance proceeds. We held that prejudgment interest did not accrue from the filing date of plaintiff's original declaratory complaint but from the date that the declaratory action was transformed into an action for a money judgment. The prejudgment interest statute applies only to actions for money judgments. Another panel of this Court has recently cited *Foremost* in affirming a trial court's limitation of prejudgment interest from the date certain service fees became payable rather than from the date of the filing of the complaint. See *Central Michigan University Faculty Ass'n v Stengren,* 142 Mich App 455, 461; 370 NW2d 383 (1985). In our view, the decision in that case conflicts with the decision in *Goins* and with our decision today and we therefore certify this case for conflicts resolution pursuant to Administrative Order No. 1984-2, 418 Mich lxxxii (1984).

Defendant next challenges the trial court's application of an exchange rate of .034 in the conversion of Belgian francs into American dollars, as to that portion of the future commissions which

would have been earned in Belgium. The trial court based its choice of rate on the rate prevailing at the time defendant terminated the contract. Defendant points out in its brief on appeal that although .034 was the prevailing rate prior to the termination of the contract and prior to the commencement of this lawsuit, the current conversion rate is .016, approximately one-half the earlier rate. Defendant argues that to apply the higher exchange rate to future commissions results in an unwarranted windfall to plaintiff.

We are not persuaded. First, we note that defendant submitted its brief on appeal on May 1, 1985, nearly three years after the expiration of the full contract period at issue here. The contract was terminated in February of 1979 and would have been automatically terminated in May of 1982. Thus, the exchange rate prevailing in 1985 is irrelevant to this case.

The trial court's application of the exchange rate prevailing at the time of the breach was not legal error:

> The view followed by most of the American courts, however, is in favor of measuring the amount of damages or debt, where payable in foreign money, by means of the rate of exchange between the two countries. These latter authorities are divided as to whether the damages should be computed by taking the rate of exchange prevailing at the time of the breach or at the time of trial or judgment. Some American cases take the view that the foreign money should be translated into American money as of the date of the breach of contract or maturity of the obligation and hold that the rate of exchange prevailing at that time governs. This also appears to be the settled law of England. Other American courts hold that the rate of exchange at the time of the trial or the

date of the recovery or the judgment should govern. [22 Am Jur 2d, Damages, § 65, pp 98-99.]

Although the trial court might have estimated the dates on which future commissions would have been earned and the exchange rates prevailing at those times, the difficulties inherent in this method are readily ascertained. Unlike some cases, this is not one in which the contract provided for the delivery of specific measures of commodities on specific future dates. In order to apply the exchange rates prevailing at the time the commissions would have been earned, the trial court would have had to determine those particular dates as well as the specific amount of the commission earned. Given the circumstances of this case, we believe that the trial court did not err in opting for the date of the breach of contract instead.

Finally, defendant argues that the award of future commissions is clearly excessive, pointing out that the future commission award is more than three times the highest profits realized by Om-El during any prior period of comparable length. However, the trial court expressly stated that the relationship between plaintiff and defendant was a developing one, with steadily increasing profits to plaintiff. Fernando Leon had begun developing business contacts for defendant's products in the 1960's when defendant had a very small export market. Because of Leon's efforts over the years, defendant's European sales had greatly increased and promised to continue growing. In arriving at its figure for future commissions, the court looked primarily to defendant's actual sales in Om-El's territory after the breach, though it also concluded that those sales would have been greater had Om-El continued as the sales repre-

sentative rather than defendant's in-house agent. The court also considered the state of competition during the period following the breach, the split of commissions that would have occurred between Om-El and other Newcor representatives who referred inquiries to Om-El, as well as the sliding scale of commission payments contracted for between the parties, and the expenses that would have been incurred by Om-El had the contract not been cancelled. Plaintiff asserts on appeal that defendant's actual sales in Om-El's territory during the years remaining on the contract after defendant's breach totaled $14,672,459. Defendant does not contest this figure on appeal.

We conclude that the trial court's award of future commission damages was neither speculative nor excessive. The award is justified by the facts and circumstances of this case and is within the range of evidence produced at trial.

Affirmed.