884 F.2d 1393
 Unpublished Disposition
NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
TAYLOR NOVELTY & TOY, INC., Plaintiff-Appellant,
v.
CITY OF TAYLOR, Defendant-Appellee,
v.
ALGENON PROPERTIES, a Michigan Co-Partnership; MIC LIMITED,
a Michigan Corporation; and MICHIGAN Reef
Corporation, a Michigan Corporation,
Counter-Defendants-Appellants.
 Nos. 88-1482, 88-1483.
 United States Court of Appeals, Sixth Circuit.
 Sept. 21, 1989.
 
 Before BOYLE F. MARTIN, Jr., MILBURN and BOGGS, Circuit Judges
 PER CURIAM.
 
 
 1
 Plaintiff-appellant Taylor Novelty & Toy, Inc. (Taylor) appeals the dismissal of its action against the defendant-appellee City of Taylor, Michigan (city), as well as the award of costs against it. Taylor sought to suspend certain city regulations that Taylor claims unconstitutionally prohibit it from operating coin-operated entertainment devices. The city filed a counterclaim against Taylor and three other companies that the city claims are the true owners of Taylor, Algenon Properties (Algenon), MIC Limited (MIC), and Michigan Reef Development Corporation (Reef). This counterclaim was dismissed, and the dismissal was not appealed. The counter-defendants, however, have appealed the award of costs against them. We affirm the dismissal of Taylor's claim and also affirm the award of costs against the defendant and the counter-defendants.
 
 
 2
 * This case concerns the proposed installation of coin-operated amusement devices in a building at 8950 Telegraph Road in the city of Taylor, Michigan. Taylor leased this property from Algenon on or about June 1, 1984. Algenon became the owner of the lot when it acquired the property by quit-claim deed from MIC, which had purchased the property in June 1984. Curiously enough, however, the lease was signed both before Taylor was incorporated and before MIC conveyed the deed to Algenon. (The deed was not conveyed until August 1984.)[1] The lease agreement states that the lessee intended to use the premises as "a coin-operated entertainment and amusement center."
 
 
 3
 In July 1984, Taylor applied for a certificate of occupancy and a building permit. Taylor's president, David Curtis, indicated in the applications that the premises would be used as a "retail store." In November 1984, after a city inspector viewed the premises and was told by Curtis that the building was to be used as a toy store, a certificate of occupancy was issued. The building permit, however, was never issued.
 
 
 4
 In December 1984, Taylor filed this action, stating in its complaint that it intended to open an establishment offering coin-operated amusement devices displaying sexually explicit materials. The establishment would also offer books, magazines and other media containing such materials. Taylor also stated that it intended to offer live entertainment, specifically nude and semi-nude dancing, through the means of the coin-operated devices. The plaintiff alleged the combined operation of city zoning ordinances, including Taylor Ordinance 83-135 and Article 15.00, Sec. 15.03(4) of the Taylor Zoning Code, unconstitutionally prohibited it from operating the establishment described in the complaint.
 
 
 5
 In 1984, Sec. 15.03(4) required that coin-operated amusement device establishments be located only in B-4 zoned districts and then only as a "permitted special land use." (The premises in question are located in a B-3 zone.) At the time of the filing of the complaint, Ordinance 83-135 (which has since been repealed) defined a "mechanical amusement arcade" as a place containing three or more mechanical amusement devices and required that: (1) a license be obtained before such an establishment could be operated; (2) such an arcade be located in a "Local Shopping Center, or an equally compatible location"; and (3) the application be reviewed by the city's fire, police, and building departments.[2]
 
 
 6
 In December 1984, after Taylor filed its complaint, the city, citing the fact that Curtis and Taylor had misled the city as to the intended use of the premises, revoked the certificate of occupancy. The plaintiff filed motions for a temporary and a permanent injunction, seeking to enjoin the city from interfering with the operation of the plaintiff's proposed business. In April 1985, the city filed a counterclaim, adding Algenon, Reef, and MIC as parties to the action. The city charged that Taylor was a sham corporation and that the counterdefendants and plaintiffs engaged in a conspiracy to misrepresent their use of the property in order to defraud the city. The city also moved for injunctive relief, seeking to enjoin Taylor from operating its business. After a hearing, the district court granted the city's motion and denied Taylor's. This court affirmed that decision. 816 F.2d 682 (6th Cir.1987).
 
 
 7
 The case was tried in December 1987. In March 1988, the court below dismissed the plaintiff's complaint on the grounds of the plaintiff's lack of capacity to sue. Taylor then moved to alter or amend judgment, specifically requesting that the counterdefendants be allowed to substitute as the real parties of interest in the suit. In April 1988, the court denied the motion. Both the dismissal of the action and the denial of the motion were appealed. Also in April, the city submitted its bill of costs. In July 1988, after the plaintiff and the counterdefendants filed objections, the court awarded the defendant $6,671.41 in costs. Taylor moved to alter or amend the judgment for costs, but the motion was denied.
 
 II
 
 8
 Taylor first argues that the court erred in holding that it lacked the capacity to sue under Rule 17(b) of the Federal Rules of Civil Procedure. The court found that Taylor was a "sham" corporation and thus was not an entity capable of maintaining a lawsuit under the rule. The court made this finding based on its conclusion that Taylor was a mere instrumentality of the counterdefendants. The plaintiff responds that it is a corporation under Michigan law and that the court had no right to dispute this fact:
 
 
 9
 In support of its argument, the plaintiff first quotes the portion of Rule 17 that states: "The capacity of a corporation to sue or be sued shall be determined under the law under which it was organized." Taylor argues that it was validly incorporated under the law of Michigan and that it remains a corporation under that law, possessing the right to sue and be sued. The doctrine of "piercing the corporate veil", Taylor argues, cannot be applied in the case of the determination of a corporation's right to sue. That doctrine is meant to allow plaintiffs to hold stockholders of a corporation responsible when the corporate form has been used to perpetrate fraud, illegality, or injustice, not to prevent a corporation from suing.
 
 
 10
 The plaintiff concludes that the court in this case simply established a rule that the question of whether a corporation will be allowed to sue will be determined by the court's opinion of the virtue of the plaintiff. Even under this standard, Taylor argues, it should prevail because its first and fourteenth amendments rights have been deprived by the actions of the city. In addition, the plaintiff points out that the defendant did not prevail on the allegations of conspiracy to commit fraud brought in its counterclaim.
 
 
 11
 We hold that the court below was justified in finding that Taylor was a sham corporation and incapable of maintaining a suit. The relevant caselaw demonstrates that Michigan law supports an expansive use of the piercing the corporate veil doctrine. In Wells v. Firestone Tire and Rubber Co., 364 N.W.2d 670, 674 (Mich.1984), the Michigan Supreme Court expanded the doctrine of piercing the corporate veil beyond the traditional actions. The court in Wells held that a parent corporation, in a suit against one of its subsidiaries by one of that subsidiary's employees, could step in and show that it in fact was the true employer of the worker. The court stated that "the fiction of a distinct corporate entity separate from the stockholders is a convenience introduced in the law to serve the ends of justice. When this fiction is invoked to subvert justice, it is ignored by the courts." Ibid. There is no simple rule for determining when the corporate entity can be disregarded; the decision on whether or not to dispense with the fiction depends on the particular facts and equities in a case. Om-El Export Co., Inc. v. Newcor, Inc., 398 N.W.2d 440, 444 (Mich.App.1986).
 
 
 12
 Michigan law allows the piercing of the corporate veil when it is proved that a subsidiary is the mere instrumentality of its parent. Maki v. Copper Range Co., 328 N.W.2d 430, 433 (Mich.App.1982) (per curiam). "In order to establish a cause of action because a subsidiary is a mere instrumentality of its parent, the following must be proved: (1) control by the parent to such a degree that the subsidiary has become its mere instrumentality; (2) fraud or wrong by the parent through its subsidiary; and (3) unjust loss or injury to the claimant." Ibid. (citations omitted).
 
 
 13
 The facts of this case show that Taylor was a sham corporation, a mere entity of the counterdefendants. It is clear, first of all, that Taylor did not operate as in the manner of a legal corporation. For example, Taylor's president of record, Curtis, testified that: (1) he did not know the officers of his own company; (2)he did not know who owned company stock or if it had been issued; and (3) he did not remember any corporate meetings.
 
 
 14
 Second, Taylor's business dealings were not conducted as if it were a separate entity. For example, the lease for the building was signed before Taylor was even incorporated, and the premises were rented from one of the parent companies for no rent. Algenon also lent money to Taylor, and the two companies shared the same attorney.
 
 
 15
 In addition, the equities of this situation are clear. The purpose of the establishment of this sham corporation was to conceal information about the workings of the companies involved from both state corporate regulators and local prosecutors interested in knowing the operators of adult establishments in their communities. Thus, in this case, justice requires that the corporate form be disregarded and the true nature of Taylor be revealed. As Taylor is truly the creature of other parties, we conclude that it has no capacity to sue under Rule 17.[3]
 
 III
 
 16
 Finally, Taylor and the counterdefendants contend that the court erred in awarding any costs to the city or, in the alternative, that it erred in awarding certain costs that were incurred in the prosecution of the city's counterclaim.
 
 
 17
 The counterdefendants first argue that the city was not entitled to any costs against them because it was not the prevailing party in the relevant action, in this case the counterclaim. Fed.R.Civ.P. 54(d). The appellants also contend that they did not have the opportunity to object to the award of costs because they assumed, after they asked the trial judge if they were liable for costs and he said no, that they need not have made any objections to the city's bill of costs.
 
 
 18
 In the alternative, the counterdefendants argue that certain costs should not have been awarded to the city because they were incurred only in the course of the prosecution of the counterclaim. These costs are: (1) the cost of producing certified corporate records for trial exhibits; (2) the filing fee for the counterclaim; (3) witness and service fees relating both to discovery and the trial concerning the counterclaim; and (4) costs for the testimony of an expert witness who testified concerning issues brought up in the counterclaim.
 
 
 19
 We hold that Taylor and the counterdefendants are liable for these costs. We note first that the counterdefendants did object to the bill of costs. They signed the objections submitted by Taylor and, in fact, although not for the specific reasons advanced in this appeal, objections were made to the very items complained of here. In addition, the appellants filed a motion to alter or amend the judgment on costs where all the objections raised here were considered and rejected by the court below.
 
 
 20
 As to whether the city was the prevailing party in the counterclaim, we are tempted simply to hold, as did the court below, that the award of costs must be looked at in the context of the decision on the merits. After all, the purpose of the counterclaim was to bring in the parties which the city contended were the real power behind Taylor. The discovery and trial presentations were designed to show the true relationship between these entities. In this goal, the city clearly succeeded, and the claim was dismissed because Taylor was proved to be a mere instrumentality of the counterdefendants. Thus, one could conclude, it is fitting that they, the real losers, should bear the costs.
 
 
 21
 However, we are reluctant to uphold the award of costs on this kind of theory. Despite the city's victory on the main claim, the fact remains that the city did not prevail on its claims against the counterdefendants. The city may have used the counterclaim to prevail over Taylor, but it was only over Taylor that it prevailed.
 
 
 22
 This award, however, can be upheld on other grounds. Russ' Kwik Car Wash v. Marathon Petroleum Co., 772 F.2d 214, 216 (6th Cir.1985). The city moved for sanctions for discovery abuses under Rule 37 of the Federal Rules of Civil Procedure, charging that the counterdefendants and Taylor, due to their refusal to reveal the true nature of their enterprises, declined to engage in normal discovery. The pursuit of the counterclaim was indispensable in the extraction of the information, in the face of this plan to conceal information. Indeed, in its opinion rejecting the appellants' motion to alter or amend, the court below stated that the companies' unwillingness to engage in discovery was a major factor in the cost award. We thus uphold the award of costs as a discovery sanction under Rule 37.
 
 
 23
 For the foregoing reasons, we AFFIRM the decision of the district court, dismissing plaintiff's action and awarding costs to the city.
 
 
 
 [1]
 In addition, the president of Taylor, David Curtis, testified that he first spotted the property around July or August of 1984, after the property was leased
 
 
 [2]
 In 1985, the zoning code was amended to allow coin-operated establishments in the B-4 zone without a special permit and to allow such establishments in B-3 zones if special permission were obtained. The new code also limited the number of arcades (which was defined as an establishment that contains three coin operated devices), as well as other specified businesses, by prohibiting the grant of a zoning application for a regulated establishment if two such establishments were presently operating within a 1,000 feet radius of the proposed site. These amendments, however, were declared null and void by the court below due to the city's failure to follow proper procedures regarding public notice
 
 
 [3]
 The plaintiff also contends that the court erred in denying its motion to alter or amend the dismissal of its claim. The plaintiff argued that it should be allowed to substitute the counterdefendants as the true parties in interest in this case so as to avoid a dismissal of its action under Rule 17. This argument is based on the premise that the dismissal of Taylor can only be accomplished under Rule 17(a), the provision requiring that all actions be brought by the real party in interest, rather than Rule 17(b)
 The plaintiff submitted various affidavits and resolutions prepared by officers of the plaintiff and the three counterdefendants stating that the latter companies were the true parties in interest. While standing behind its ruling on Taylor's lack of capacity, the court discussed the submissions, terming them "specious" and "self-serving" primarily because the alleged officers, such as Curtis, either testified that they knew little about the corporations or took the fifth amendment concerning their testimony. We agree with the district court's characterization of these affidavits. We find, in particular, that it would be difficult to credit the affidavits of the alleged officers of the so-called real parties in interest when those individuals, claiming a fifth amendment privilege, refused to be deposed concerning their role in these companies.