## HI–MILL MANUFACTURING COMPANY, a Michigan corporation, Plaintiff,

v.

## AETNA CASUALTY & SURETY COMPANY, Defendant.

### No. 90–CV–72494–DT.

United States District Court,
E.D. Michigan,
Southern Division.

March 27, 1995.

---

Butzel Long, P.C., John H. Dudley, Jr., Jack D. Shumate, Detroit, MI, for plaintiff.

Plunkett & Cooney, P.C., Charles W. Browning, Kenneth C. Newa, Detroit, MI, for defendant.

*ORDER GRANTING PLAINTIFF'S MO-TION FOR PARTIAL SUMMARY JUDGMENT AND DENYING DE-FENDANT'S MOTION FOR PAR-TIAL SUMMARY JUDGMENT*

WOODS, District Judge.

This matter having come before the Court on cross-motions for partial summary judgment;

The Court having reviewed the pleadings submitted herein, and being otherwise fully informed in the matter;

The Court finds that plaintiff's motion for partial summary judgment shall be, and hereby is, GRANTED; defendant's motion for partial summary judgment shall be, and hereby is, DENIED.

## I. INTRODUCTION

Before the Court are cross-motions for partial summary judgment on issues relative to plaintiff's entitlement to prejudgment interest. In August, 1990, plaintiff filed the above-entitled action seeking declaratory relief and money damages after defendant denied coverage for an underlying Superfund enforcement action which the U.S. Environmental Protection Agency (EPA) commenced against plaintiff in 1988. On March 21, 1991, this Court entered a memorandum opinion and order granting plaintiff's motion for summary judgment finding that plaintiff's receipt of a PRP letter from the EPA imposed on defendant a duty to defend. In order to permit an immediate appeal, this Court directed its March 21, 1991 order be entered as a final judgment.

In an amended *per curiam* opinion dated June 8, 1993, the United States Court of Appeals for the Sixth Circuit reversed this Court's decision. The Sixth Circuit relied on its earlier holding in *Ray Industries, Inc. v. Liberty Mutual Ins. Co.*, 974 F.2d 754 (6th Cir.1992) in finding that receipt of a PRP letter did not trigger an insurer's duty to defend. The Court acknowledged, however, that it would be bound by a Michigan Supreme Court pronouncement, should that court rule to the contrary on this issue. The Sixth Circuit vacated the remainder of this Court's opinion and dismissed without prejudice the duty to defend portion of the declaratory judgment action.

In November, 1994, in *Michigan Millers Mutual Ins. Co. v. Bronson Plating Co.*, 445 Mich. 558, 519 N.W.2d 864 (1994), the Michigan Supreme Court held that the receipt of a PRP letter, informing an insured of its potential liability for alleged environmental contamination, constitutes "a suit" imposing upon an insurer a duty to defend. *Id.* at 575, 519 N.W.2d 864. In accordance with the holding in *Michigan Millers*, this Court entered an Order dated November 23, 1994 granting plaintiff's motion to reinstate duty to defend portion of the action and reinstating previous order granting plaintiff's motion for summary judgment on the duty to defend. The case was scheduled for trial on December 12, 1994.

On December 6, 1994, the parties informed the Court they had reached a partial compromise and settlement of plaintiff's claims. Pursuant to a consent judgment to be entered by the Court, defendant will pay plaintiff $2,250,000.00 in partial reimbursement of the defense costs which plaintiff incurred in the underlying Superfund action. The parties disagree, however, on whether plaintiff is entitled to prejudgment interest, and if so, how such interest should be computed. In addition, the parties dispute whether various EPA and Department of Justice (DOJ) oversight costs incurred by plaintiff constitute defense costs for the purposes of calculating prejudgment interest. With leave of the Court, the parties have submitted these issues for determination in the form of cross-motions for partial summary judgment. Specifically, the issues presented are:

1) whether in light of the Sixth Circuit's amended per curiam decision dated June 8, 1993, which dismissed without prejudice the duty to defend portion of this action,

Hi–Mill is entitled to prejudgment interest on the judgment amount of $2,250,000.00; 2) to the extent that prejudgment interest is owed by Aetna, the date or dates from which such interest should be calculated in light of a) the Sixth Circuit's amended per curiam decision dated June 8, 1993, and/or b) the fact that portions of the defense costs were incurred and paid during different periods of time; 3) whether the EPA and DOJ oversight costs incurred prior to the entry of the recent Consent Decree between Hi–Mill and the EPA properly qualify as defense costs under the policies for purposes of calculating the amount of prejudgment interest due (if prejudgment interest is otherwise determined to be due and owing). The parties agree that the $2,250,000.00 defense costs settlement includes oversight costs which EPA and DOJ have tendered (or will tender) to Hi–Mill.

## II. PLAINTIFF IS ENTITLED TO PREJUDGMENT INTEREST ON THE JUDGMENT AMOUNT

■ The question of prejudgment interest in a diversity action is governed by state law. *Diggs v. Pepsi–Cola Metropolitan Bottling Co.*, 861 F.2d 914, 924 (6th Cir.1988). In Michigan, an award of prejudgment interest is derived from statute. *Gordon Sel-Way v. Spence Bros.*, 438 Mich. 488, 499 n. 9, 475 N.W.2d 704 (1991). The parties concede that any award of prejudgment interest in the present case is directed by Mich.Comp. Laws Ann. § 600.6013(5) (West Supp.1994). That section provides:

> For complaints filed on or after January 1, 1987, if a judgment is rendered on a written instrument, interest shall be calculated from the date of filing the complaint to the date of satisfaction of the judgment at the rate of 12% per year compounded annually, unless the instrument has a higher rate of interest....

Section 6013 is a remedial statute to be liberally construed in favor of the plaintiff. *Old Orchard by the Bay Associates v. Hamilton Mutual Ins. Co.*, 434 Mich. 244, 260, 454 N.W.2d 73 (1990); *Denham v. Bedford*, 407 Mich. 517, 528, 287 N.W.2d 168 (1980); *McKelvie v. Auto Club Ins.*, 203 Mich.App. 331, 339, 512 N.W.2d 74 (1994). The primary purpose of the provision is to compensate a litigant for the delay in receiving money damages. *Rittenhouse v. Erhart*, 424 Mich. 166, 191–92, 380 N.W.2d 440 (1985); *Dep't of Treasury v. Central Wayne County Sanitation Authority*, 186 Mich.App. 58, 61, 463 N.W.2d 120 (1990); *McDaniel v. Macomb County Bd. of Road Comm.*, 169 Mich.App. 474, 477, 426 N.W.2d 747 (1988). The section is further intended to encourage prompt settlement and compensate litigants for expenses incurred in bringing an action. *Old Orchard, supra* at 252–253, 454 N.W.2d 73; *Rittenhouse, supra* at 191–92, 380 N.W.2d 440; *McDaniel, supra* at 477, 426 N.W.2d 747; *Goins v. Ford Motor Co.*, 131 Mich.App. 185, 202, 347 N.W.2d 184 (1983); *but see, Farmers Ins. Group v. Lynch*, 186 Mich.App. 537, 538, 465 N.W.2d 21 (1990).

■ In the insurance context, prejudgment interest promotes settlement, and discourages an insurer from engaging in litigation solely to delay making payment. *Old Orchard, supra* at 253, 454 N.W.2d 73 (citing *Matich v. Modern Research Corp.*, 430 Mich. 1, 12–15, 420 N.W.2d 67 (1988)). It is plaintiff's position that it is entitled to prejudgment interest. Plaintiff argues that section 6013 is unambiguous and must be enforced according to its mandatory terms. Defendant asserts that an award of prejudgment interest rests within the discretion of the district court, and that the purposes of section 6013 are not furthered by an award of interest in the present case.

■ Michigan Courts have ruled that an award of prejudgment interest on a money judgment is mandatory under section 6013. *See Dept. of Treasury, supra* at 61, 463 N.W.2d 120; *Marina Bay Condominiums, Inc. v. Schlegel*, 167 Mich.App. 602, 609, 423 N.W.2d 284 (1988); *Goins, supra* at 201–02, 347 N.W.2d 184. Defendant has not provided the Court with any authority to the contrary.[1] Based upon the above precedent,

---

1. Defendant cites *Great Lakes Towing Co. v. Kelley Island Lime & Transport Co.*, 176 F. 492 (6th Cir.1910); *Reiss Steamship Co. v. U.S. Steel Corp.*, 427 F.2d 1152 (6th Cir.1970); *In re Bridge,*

and the clear, mandatory language of the statute, the Court finds that plaintiff is entitled to prejudgment interest on the money judgment.

Defendant argues that policy considerations warrant a departure from the strict application of section 6013. Defendant maintains there has been no delay in reimbursement of plaintiff's defense costs. Defendant further contends it should not be penalized because it "prevailed" in the litigation until the *Michigan Millers* decision, and promptly engaged in settlement negotiations after the change in the law. In response, plaintiff asserts defendant delayed payment of defense costs for more than four years after plaintiff filed its complaint. In addition, plaintiff asserts that defendant's denial of coverage has resulted in intensive and protracted litigation between the parties. Further, plaintiff argues the fact that defendant "prevailed" for a period of time is irrelevant pursuant to the clear language of the statute.

The Court finds the mandatory dictates of section 600.6013 dispositive on the issue of plaintiff's entitlement to prejudgment interest. In addition, the Court finds the legislative intent of the statute furthered by an award of interest in this case. The purposes of the provision are to compensate a litigant for delay in receiving payment and the expenses of litigation, and to encourage settlement. *Rittenhouse, supra* at 191–92, 380 N.W.2d 440.

Defendant contends there was no delay in making payment because it did not have a duty to defend until the Michigan Supreme Court's pronouncement in *Michigan Millers*. Regardless of whether defendant experienced temporary "victories" during the course of the litigation, the statute compels an award of prejudgment interest on a final money judgment. Section 6013 compensates an insured for the delay in the use of money. In the present case, there is no question that defendant had the benefit of the use of the funds for more than four years of ensuing litigation. The Court finds there has been a significant delay in the payment of defense costs.[2]

The prejudgment interest statute is also intended to promote early settlement. The Michigan Supreme Court has explained:

> Payment of prejudgment interest not only compensates the prevailing party but also liability for prejudgment interest may act as an incentive to the insurer to promptly settle a meritorious claim. Without such an incentive, the insurer may refuse to settle a meritorious claim in hopes of forcing plaintiff to settle for less than the claim's true value. The insurer risks nothing. Even if protracted litigation results, the insurer will only be liable for its policy limits-all the while reaping a tidy sum from its investment of the policy limits.

*Denham, supra* at 536, 287 N.W.2d 168. Defendant contends it acted promptly in attempting to resolve the instant dispute. However, the record reveals that the parties entered into a settlement agreement only after the decision in *Michigan Millers*, the reinstatement of the duty to defend portion of the action, and six days before the scheduled trial date. To find that defendant encouraged early settlement would thwart the intent of the statute; to avoid protracted litigation.

The crux of defendant's argument against rigid application of section 6013 is the June 8, 1993 decision of the Sixth Circuit, which held that the receipt of a PRP letter does not

---

106 B.R. 474 (E.D.Mich.1989); and *Saber v. Saber*, 146 Mich.App. 108, 379 N.W.2d 478 (1985) for the proposition that a prejudgment interest award is discretionary. The Court finds these cases inapposite to the present case. *Great Lakes Towing* and *Reiss* are federal maritime actions, *In re Bridge* concerns an award of prejudgment interest to a trustee in a bankruptcy action, and *Saber* involves prejudgment interest on a judgment of divorce. In fact, in *Saber* the court ruled that an award of interest is discretionary in equitable actions, but "is mandatory in cases to which [section 600.6013] applies." *Id.* at 110, 379 N.W.2d 478 (citations omitted).

**2.** There is no dispute that an award of prejudgment interest will also compensate plaintiff for litigation expenses incurred. Defendant does not dispute that the parties have engaged in protracted and intensive litigation. In fact, plaintiff informs the Court that over the four years counsel has taken forty-three depositions, filed several multi-branch motions, filed six motions in limine, and participated in an appeal.

trigger an insurer's duty to defend. Defendant implicitly argues that it acted in "good faith" by denying defense coverage because it had no obligation to defend. Defendant's analysis is flawed in that it assumes that only litigants who are successful at every stage of the litigation are ·entitled to prejudgment interest. The statute does not provide for such a distinction. Further, the Sixth Circuit was explicit in noting that should the Michigan Supreme. Court decide the issue differently, it would be bound by that result. Thus, defendant was on notice that its "victory" in the Sixth Circuit was contingent upon a consistent ruling by the Michigan Supreme Court or its continued silence on the issue.

In addition, defendant, a sophisticated insurance company, is undoubtedly aware of the potential consequences when it makes an affirmative decision not to defend. In Michigan, an insurer has two options when faced with a notice of claim:

> It can undertake the defense with notice to the insured that it is reserving the right to challenge its liability on the policy. The second alternative for the insurer is to repudiate liability, refuse to defend and take its chances that there will be a showing that there is no coverage for the insured's liability.

*Detroit Edison Co. v. Michigan Mutual Ins. Co.*, 102 Mich.App. 136, 145, 301 N.W.2d 832 (1980). If an "insurer refuses to defend, it must do so at its peril, and if the insurer guesses wrong, it must bear the consequences of its breach of contract." *Riverside Insurance Co. v. Kolonich*, 122 Mich.App. 51, 58, 329 N.W.2d 528 (1982) (quoting 44 Am.

Jur.2d, Insurance, § 1408, pp. 348–349). Plaintiff presented defendant with its notice of claim more than six years ago. At that time, defendant had a choice of providing coverage under a reservation of rights, or refusing to defend. Defendant was surely cognizant of section 6013 and the potential consequences of its decision not to defend at the onset of this litigation. ·

## III. PLAINTIFF IS ENTITLED TO PREJUDGMENT INTEREST FROM THE DATE OF FILING THE COMPLAINT

■ The prejudgment interest statute reads: "interest shall be calculated from the date of filing the complaint to the date of satisfaction of judgment." Defendant urges the Court to ignore the operative statutory language and award interest from the date defendant delayed payment.[3] Rather than granting a windfall·for plaintiff, defendant asserts that the purposes of the statute will be served by defendant compensating plaintiff for the actual delay in receiving reimbursement. In support of its position, defendant relies on a line of cases holding that prejudgment interest shall be calculated from some time after the date the complaint was filed. *See e.g., Foremost Life Ins. Co. v. Waters*, 125 Mich.App. 799, 337 N.W.2d 29 (1983); *Central Michigan Univ. Faculty Ass'n v. Stengren*, 142 Mich.App. 455, 370 N.W.2d 383 (1985); *Farmers Ins. Group v. Lynch*, 186 Mich.App. 537, 465 N.W.2d 21 (1990); *Thorin v. Bloomfield Hills Bd. of Educ.*, 203 Mich.App. 692, 513 N.W.2d 230 (1994).[4] While acknowledging the existence

---

**3.** Defendant provides the Court with four alternative methods of computation: 1) calculate prejudgment interest from September 1, 1994 (the date of the denial of rehearing in *Michigan Millers*) to the date of the satisfaction of judgment; 2) calculate prejudgment interest from the date that plaintiff actually expended the funds to the date of the satisfaction of the judgment; 3) calculate prejudgment·interest from November 23, 1994, the date of this Court's order reinstating the duty to defend portion of the case; 4) calculate prejudgment interest from the date of filing the complaint, however, toll the interest from the filing of defendant's notice of appeal (March 3, 1992) to the date of the denial of rehearing in *Michigan Millers* (September 1, 1994).

**4.** In *Foremost*, defendant was injured in an automobile accident and awarded benefits pursuant to a group disability insurance policy. Defendant filed suit against the tortfeasor which ultimately resulted in the entry of a consent judgment. Plaintiff then filed an .action for declaratory relief, seeking a determination that it was entitled to reimbursement of the sums paid to defendant. The trial court entered judgment for plaintiff and ordered defendant to reimburse plaintiff pursuant to a subrogation clause in the insurance policy. *Id.* at 801, 337 N.W.2d 29. The trial court also awarded plaintiff prejudgment interest from the date plaintiff filed its complaint. The court of appeals reversed, ruling plaintiff was only seeking declaratory relief on the date the complaint was filed. The court held

of the above authority awarding prejudgment interest from the date of delay, the Court finds such cases contrary to the legislative directive embodied in section 6013. A better reasoned approach, and one which this Court will follow, directs the computation of prejudgment interest from the date of filing the complaint.

In emphasizing the mandatory nature of the statute, the Michigan Supreme Court has ruled: "[a]ny judicial attempt to read a restriction into [the statute], however, is foreclosed. This Court cannot refuse to award prejudgment interest in a 'civil action' (from the date of the filing of the complaint in contravention of the plain language of [the statute]." *Old Orchard, supra* at 260, 454 N.W.2d 73; *see also Gordon Sel–Way, supra* at 511, 475 N.W.2d 704 ("[section] 600.6013 ... governs the award of interest from the date the complaint is filed until the date judgment is satisfied."). In *Goins, supra* the Michigan Court of Appeals reversed a trial court award of interest from the dated of the verdict rather than the date the complaint was filed. The court ruled, "[s]ection 6013 expressly provides that interest is to be paid from the date the complaint is filed. The allowance of interest under this provision is mandatory." *Id.* at 202, 347 N.W.2d 184.

In *Om–El Export Company, Inc. v. Newcor, Inc.,* 154 Mich.App. 471, 398 N.W.2d 440 (1986) defendant argued that prejudment interest should accrue on future commissions when such damages became payable rather than on the date of the filing of the complaint. *Id.* at 480, 398 N.W.2d 440. Relying on *Goins* and the mandatory language of section 6013, the court rejected defendant's position and ruled that a "straightforward interpretation of the prejudgment interest statute allows interest on a money damages award from the date of the filing of the complaint. Had the Legislature intended to provide differently in the case of awards involving future damages, it could have easily done so by express provision in the statute." *Id.* at 481, 398 N.W.2d 440.[5] *See DeMarco v. Ohio Decorative Products, Inc.,* 1994 WL 59009, \*13, 1994 U.S. App. LEXIS 3848, \* 41–43 (6th Cir. Feb. 25, 1994) (following *Om– El* ).

Defendant's reliance on *McKelvie, supra* is misplaced. Although the *McKelvie* court computed prejudgment interest from the date of delay, the reasoning in *McKelvie* supports this Court's holding. In *McKelvie,* the claim upon which a money judgment was rendered arose more than two years after the filing of plaintiff's original complaint. *Id.* at 339, 512 N.W.2d 74. The court reasoned that calculating prejudgment interest from the date of the initial complaint "exceeds the purpose of compensating for a delayed payment, overcompensates for the related litiga-

that the claims upon which plaintiff sought money damages did not arise until the date the parties to the underlying lawsuit entered into a consent judgment. *Id.* at 803, 337 N.W.2d 29. The court reasoned, "[d]efendant was not in possession of the funds to which plaintiff asserted a claim until April 8, 1977. Until that date there had been *no detention of funds by defendant."* *Id.*

The plaintiff in *Foremost* was not seeking money damages until some time after the date the complaint was filed. The court in *Goins, supra* further explained, "[u]ntil defendant [in *Foremost* ] did reach a consent agreement in her pending tort action, plaintiff was not seeking money damages but a declaration of law: the interpretation of its policy of insurance. Therefore, plaintiff was not seeking money damages in a civil action until defendant established a collectible fund." *Id.* at 203, 347 N.W.2d 184. In the present case, plaintiff was seeking money damages on August 1, 1990, the date it filed its complaint. Plaintiff is therefore entitled to an award of prejudgment interest from the date of its filing.

In *Central Michigan,* the Court relied on *Foremost* in awarding prejudgment interest on fees payable from the date they became due. *Id.* at 461, 370 N.W.2d 383. In *Farmers,* the Court followed *Central Michigan* in computing interest after the complaint was filed and only from the date that benefits were paid. *Id.* at 538–39, 465 N.W.2d 21. In *Thorin,* the Court stated in a footnote that interest would be calculated in accordance with *Central Michigan.*

Absent from the Court's decisions in *Central, Foremost, Farmers* and *Thorin* is any discussion of the plain language of section 6013. The cases are devoid of any rationale, and indeed, provide no justification for departing from the clear and unambiguous statutory terms. This Court declines to follow this line of authority.

5. In fact, the Legislature has exempted certain future damages from application of the statute. *See* Mich.Comp.Laws Ann. § 600.6013(1) (West Supp.1994).

tion, and departs from the purpose of providing an incentive for prompt settlement by both imposing a penalty upon the defendant and conferring a favor upon the plaintiff." *Id.* at 339, 512 N.W.2d 74. Accordingly, the court awarded prejudgment interest from the time the claim upon which judgment was rendered arose.[6]

In the present case, plaintiff filed its complaint on August 1, 1990 seeking declaratory relief and money damages for defendant's alleged breach of the duty to defend, and indemnification. The mandatory language of section 6013 compels an award of prejudgment interest from the date of filing the complaint. *Om–El, supra.* Accordingly, although some of plaintiff's defense costs arose after August 1, 1990, plaintiff is entitled to prejudgment interest from the date of the filing the complaint. Such an award serves the purposes of the statute by compensating plaintiff for the delay in receiving money damages and its litigation expenses.[7]

## IV. EPA OVERSIGHT COSTS ARE DEFENSE COSTS

■ The final issue before the Court is whether EPA oversight costs are defense costs. Plaintiff argues that under the Comprehensive Environmental Response, Compensation, and Liability Act ("CERCLA"), it is responsible for reimbursing the government for the costs of conducting a Remedial Investigation and Feasibility Study ("RI/FS"). Plaintiff maintains that such costs were necessary, unavoidable expenses in presenting its defense, and thus are properly characterized as defense costs. Defendant claims the oversight costs were incurred by the EPA and the DOJ in prosecuting its

administrative proceeding against plaintiff and do not qualify as defense costs.

In *Gelman Sciences, Inc. v. Fireman's Fund Ins. Companies,* 183 Mich.App. 445, 455 N.W.2d 328 (1990), the Michigan Court of Appeals held an insured's expenditures in taking preventative measures to avoid future liability were indemnification rather than defense costs. *Id.* at 449, 455 N.W.2d 328. In *Gelman,* the insurer sought a declaratory judgment that the insured had a duty to defend and indemnify in an underlying environmental contamination action. After the trial court held defendant had a duty to defend, the insured submitted a request to the insurer for reimbursement of expenses incurred in installing city water line hookups for area residents and a township sewer system. *Id.* at 447–48, 455 N.W.2d 328.

The court ruled an insurer is only responsible for reimbursing defense costs defined as "monies expended to develop and put forth a theory that the defendant is not liable or only partially liable for the plaintiff's injuries." *Id.* at 448, 455 N.W.2d 328. Indemnification costs, of which there is no coverage, are "monies paid to compensate for injury suffered through the unlawful act or omission or negligence of another." *Id.* at 448–49, 455 N.W.2d 328 (citation omitted). The court held the insured's costs were not necessary to defend it in the underlying action, but were preventative measures taken to avoid future liability. Accordingly, such costs were properly characterized as indemnification damages rather than defense costs. *Id.* at 449, 455 N.W.2d 328.

At issue in the case at bar are RI/FS oversight costs for which plaintiff is required to reimburse the EPA. CERCLA actions are governed by statute. *See* 42 U.S.C.A.

6. The *McKelvie* court relied on *Rittenhouse, supra.* In *Rittenhouse,* the issue before the Michigan Supreme Court was which complaint should be used for purposes of calculating prejudgment interest. In *Rittenhouse,* the defendant against whom a money judgment was rendered was first named in a second amended complaint filed more than two years after plaintiff's initial complaint. *Id.* at 189, 380 N.W.2d 440. The trial court held plaintiff was entitled to prejudgment interest from the date the second complaint was filed. The Court of Appeals reversed, holding the interest should accrue from the filing of the original complaint. The Supreme Court reversed,

holding that interest shall be calculated from the date of the filing the complaint against the defendant against whom judgment was entered. *Id.* at 218, 380 N.W.2d 440. Accordingly, in *Rittenhouse* and *McKelvie,* the Court awarded interest from the date of the amended complaint raising the claim upon which judgment was entered.

7. Consistent with the holdings in *Rittenhouse* and *McKelvie,* the Court is awarding prejudgment interest on the complaint containing the claim upon which judgment was entered.

§§ 9604–9675 (West Supp.1994). Section 9613(j)(1) provides that judicial review of any governmental response action "shall be limited to the administrative record." Subsection (k)(1) requires the government to develop "an administrative record upon which the President shall base the selection of a response action," and permits the participation of potentially responsible parties in creating the administrative record. In *Michigan Millers, supra* the Michigan Supreme Court discussed the "critical importance" of the development of the administrative record and its crucial role in potential CERCLA litigation. *Id.* at 573, 519 N.W.2d 864. "Given the strict liability stance of CERCLA, [the information comprising the administrative record] is all that is needed to establish both the fact and proportional share of [a potentially responsible party's] liability at the site." *Id.* at 574, 519 N.W.2d 864. The court stated:

> The entire CERCLA scheme revolves around "encouraging" PRPs to engage in voluntary cleanups. Only in so doing may a PRP have a voice in developing the record that will be used against it and in determining the amount of its liability through selection of investigatory and remedial methods and procedures.

*Id.*

Pertinent to the development of the administrative record is a RI/FS which "identifies, evaluates, and compares alternative approaches to remediation." *U.S. v. Rohm and Haas Co.,* 2 F.3d 1265, 1271 (3rd Cir.1993). Under controlled circumstances, Section 9604 permits a potentially responsible party to conduct the RI/FS:

> When the President determines that such action will be done properly and promptly by ... [a] responsible party, the President may allow such person to carry out the action, conduct the remedial investigation, or conduct the feasibility study.... No remedial investigation or feasibility study (RI/FS) shall be authorized except on a determination by the President that the party is qualified to conduct the RI/FS and only if the President contracts with or arranges for a qualified person to assist the President in overseeing and reviewing the conduct of such RI/FS and if the responsible party agrees to reimburse the Fund for any cost incurred by the President under, or in connection with, the oversight contract or arrangement.

Accordingly, a potentially responsible party may conduct the RI/FS study only if it agrees to reimburse the government for any oversight costs. In the present case, plaintiff argues that the reimbursement of EPA's oversight costs constitute defense costs as they were expended to "develop and put forth a theory that the defendant is not liable" for contamination. The Court agrees. Under Michigan law, plaintiff's receipt of a PRP letter constituted a "suit" and placed plaintiff in a defensive position. As recognized by the Court in *Michigan Millers,* prudence requires a PRP to participate in the development of the administrative record. Plaintiff conducted a RI/FS study for the sole purpose of minimizing or absolving itself of liability. Accordingly, the Court finds the EPA oversight costs of the RI/FS study were expended in defense of the underlying CERCLA action. Under *Gelman, supra* the EPA oversight costs are properly characterized as defense costs.

## V. CONCLUSION

Pursuant to the mandatory language of section 6013, the Court finds plaintiff is entitled to prejudgment interest from August 1, 1990, the date of filing its complaint. In addition, under Michigan law, the EPA oversight costs are defense costs.

WHEREFORE, IT IS HEREBY ORDERED, that plaintiff's motion for partial summary judgment shall be, and hereby is, GRANTED; defendant's motion for partial summary judgment shall be, and hereby is, DENIED.

So Ordered.