98 F.3d 1341
 NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
HI-MILL MANUFACTURING COMPANY, a Michigan Corporation,
Plaintiff-Appellee,
v.
AETNA CASUALTY & SURETY COMPANY, Defendant-Appellant.
 No. 95-1612.
 United States Court of Appeals, Sixth Circuit.
 Oct. 3, 1996.
 
 Before: GUY and BATCHELDER, Circuit Judges; and SPIEGEL, District Judge.*
 RALPH B. GUY, Jr., Circuit Judge.
 
 
 1
 The insured, Hi-Mill Manufacturing Company, sued its insurer, Aetna Casualty & Surety Company, for declaratory relief and money damages in connection with general comprehensive liability policies issued by defendant to plaintiff. In particular, plaintiff sought coverage under the policies for a Superfund enforcement action brought by the United States Environmental Protection Agency against Hi-Mill for releases of pollutants to groundwater and soil. The district court ruled that the insurer had a duty to defend plaintiff in its administrative action. The parties reached a partial compromise and settlement of plaintiff's remaining claims but filed cross-motions for partial summary judgment on the issues of (1) whether plaintiff were entitled to prejudgment interest on its defense costs and, if so, on what basis would that interest be calculated, and (2) whether government oversight costs incurred by plaintiff in conducting the Remedial Investigation/Feasibility Study for the administrative action would be properly included as defense costs. The district court concluded that plaintiff was entitled to prejudgment interest on defense costs, including government oversight costs, to be calculated from the date of plaintiff's filing of its complaint. See Hi-Mill Mfg. Co. v. Aetna Casualty & Surety Co., 884 F.Supp. 1109 (E.D.Mich.1995). We affirm.
 
 I.
 
 2
 Hi-Mill Manufacturing Company is a small, family-owned business in Highland Township, Michigan. The company, which has been in operation since 1946, manufactures brass, aluminum and copper tubing. Defendant, Aetna Casualty & Surety Company, began issuing Hi-Mill general comprehensive liability insurance policies in 1966.
 
 
 3
 From 1946 until 1978, as part of its manufacturing process, Hi-Mill rinsed finished tubing in a chemical solution. The solution was then diluted and dumped in a natural hollow at the rear of the plant. By the 1960s, the Michigan Department of Natural Resources (MDNR) advised Hi-Mill that additional precautions should be taken, and the company began to modify its disposal processes. By 1978, in response to a new MDNR recommendation, Hi-Mill discontinued eliminating discharges to the holding ponds.
 
 
 4
 In 1988, however, Hi-Mill received a letter from the United States Environmental Protection Agency indicating that it had been identified as a Potentially Responsible Party (PRP) for the release of polllutants at the site based on its earlier disposal practices. The EPA further informed Hi-Mill that the agency would undertake an investigation of these releases, commonly known as the remedial investigation/feasibility study (RI/FS), unless Hi-Mill did so. To control the cost of the investigation and the contents of the administrative record in the agency action, Hi-Mill agreed to undertake the RI/FS. The stated purpose of the investigation was "to determine fully the nature and extent" of contamination, if any, at the site. (App. 202.)
 
 
 5
 Over the next five years, at a cost in excess of $2.5 million, Hi-Mill conducted the RI/FS subject to federal review. Based on the results of the investigation, the EPA concluded that no cleanup was required and that the site did not present risk either to human health or the environment. Hi-Mill notified its insurer, Aetna, in the fall of 1988 of the EPA's action and sought coverage. In 1990, Aetna denied Hi-Mill's claim on grounds that no "suit" had been filed as that term appeared in the policies.
 
 
 6
 In 1990, Hi-Mill filed a declaratory action in state court seeking damages against Aetna. Aetna removed the action to federal court on diversity grounds. Hi-Mill then moved for summary judgment on the issue of Aetna's duty to defend. The district court granted the motion and Aetna appealed. This court, relying on controlling prior precedent, Ray Industries, Inc. v. Liberty Mutual Insurance Co., 974 F.2d 754 (6th Cir.1992), reversed. Hi-Mill Mfg. Co. v. Aetna Casualty & Surety Co., No. 92-1351, 1993 WL 76922 (6th Cir. June 8, 1993). We had determined in Ray Industries that under Michigan law the duty to defend was not triggered by an insured's receipt of a PRP letter. 974 F.2d at 762. In reversing in Hi-Mill, however, we noted that "[s]hould the Michigan Supreme Court decide the issue differently in the future, we will be bound by that determination if it varies from our prediction in Ray Industries [as to how the Michigan Supreme Court would decide this issue.]" 1993 WL 76922, at * 3. We then vacated the remainder of the court's opinion and dismissed without prejudice the plaintiff's duty to defend claim.
 
 
 7
 Following our decision, the Michigan Supreme Court did determine that a PRP letter triggers an insurer's duty to defend. Michigan Millers Mutual Ins. Co. v. Bronson Plating Co., 519 N.W.2d 864 (Mich.1994). In reliance on this decision and upon a motion by plaintiff, the district court reinstated its earlier order on defendant's duty to defend.
 
 
 8
 Meanwhile, the remainder of plaintiff's declaratory action, including its claim for indemnification, had gone forward and was scheduled to be tried. Six days before trial, the parties announced a partial compromise and settlement of plaintiff's claims. Pursuant to a consent judgment to be entered by the district court, defendant agreed to pay plaintiff $2,250,000 in partial reimbursement of the defense costs incurred in the Superfund action, including agency oversight costs that plaintiff had incurred in conducting the RI/FS. The parties disagreed, however, on whether plaintiff was entitled to prejudgment interest, and, if so, how that interest should be calculated. In addition, defendant disputed the inclusion of oversight costs as defense costs for purposes of calculating prejudgment interest. Following motions for partial summary judgment, the district court ruled in favor of plaintiff on all these issues. Defendant now appeals.
 
 II.
 
 9
 A. The Availability of Prejudgment Interest and its Proper Calculation
 
 
 10
 The question of prejudgment interest in a diversity action is governed by state law. Diggs v. Pepsi-Cola Metro. Bottling Co., 861 F.2d 914, 924 (6th Cir.1988). In Michigan, prejudgment interest is dictated by statute. See Mich.Comp.Laws Ann. § 600.6013(5) (West 1987). That section provides:
 
 
 11
 For complaints filed on or after January 1, 1987, if a judgment is rendered on a written instrument, interest shall be calculated from the date of filing the complaint to the date of satisfaction of the judgment at the rate of 12% per year compounded annually, unless the instrument has a higher rate of interest....
 
 
 12
 Id.
 
 
 13
 The district court determined that plaintiff is entitled to prejudgment interest calculated from the date of plaintiff's filing the complaint in 1990. On appeal, defendant asserts that despite the language of the statute, an award of prejudgment interest is discretionary and that the purposes of Michigan's prejudgment interest statute are not served by an award in this case. Alternatively, defendant argues that if prejudgment interest is warranted, contrary to the language of the statute, it should not be calculated from "the date of filing the complaint." Defendant relies on the fact that until the Michigan Supreme Court determined that a PRP letter triggered a duty to defend, defendant had prevailed on that issue in the litigation. Plaintiff argues that the statute's language is unambiguous and should be enforced according to its terms.
 
 
 14
 We are not persuaded under what defendant terms the "highly unique" facts of this case that this is an occasion to depart from the clear and unambiguous language of § 600.6013(5). Defendant has failed to cite a single case in which prejudgment interest has been denied under that statute. While we recognize there is authority on both sides of the issue as to when to begin calculation of prejudgment interest, compare, e.g., Farmers Ins. Group v. Lynch, 465 N.W.2d 21, 22 (Mich.Ct.App.1990) (if a sum does not become payable until a date subsequent to the filing of the complaint, then interest does not begin to accrue until the date payable) with Om-El Export Co. v. Newcor, Inc., 398 N.W.2d 440 (Mich.Ct.App.1986) (prejudgment interest on future commissions is calculated from the date of filing the complaint rather than on the date accrued), we find those cases enforcing the language of the statute to be the better reasoned approach. In arguing against "rigidly" applying the statute, defendant offers for consideration three alternative methods of calculating prejudgment interest other than from the date of filing the complaint. In advocating these alternative methods defendant contends enforcement of the statute as written "unfairly penalizes" Aetna, and creates a "windfall" for Hi-Mill.
 
 
 15
 These arguments are better presented to the Michigan legislature. See New Orleans v. Dukes, 427 U.S. 297, 303 (1976) ("judiciary may not sit as a superlegislature to judge the wisdom or desirability of legislative policy determinations made in areas that neither affect fundamental rights nor proceed along suspect lines"). Indeed, the Michigan legislature did curtail the broad scope of the statute by exempting from its application certain future damages. See Mich.Comp.Laws Ann. § 600.6013(1) (West 1987).
 
 
 16
 Finally, Aetna could have avoided any responsibility for prejudgment interest. At the time Hi-Mill sought coverage, defendant had the choice of providing coverage under a reservation of rights, or refusing to defend. It chose the latter and its attendant consequences. Accordingly, we decline to disturb the district court's award of prejudgment interest and its calculation of interest from the filing date of the complaint.
 
 B. Agency Oversight Costs as Defense Costs
 
 17
 We next consider whether the district court erred as a matter of law in determining that agency oversight costs for the RI/FS charged to Hi-Mill are includable as defense costs for purposes of calculating prejudgment interest. Defendant argues that these costs are more aptly considered "prosecution" costs and therefore are excludable. In disputing defendant's claim, plaintiff points out that under the Comprehensive Environmental Response, Compensation and Liability Act (CERCLA), 42 U.S.C. §§ 9601 et seq., plaintiff must reimburse the government for these costs. See id. at § 9604(a)(1). Plaintiff incurred the costs in attempting to minimize its liability through conducting the RI/FS. Therefore, plaintiff argues, they are includable.
 
 
 18
 Under Michigan law, defense costs have been defined as "those [costs] reasonable and necessary to defeat or limit liability or to limit the cost of remediation." American Bumper and Mfg. Co. d/b/a American Anodco, Inc. v. Hartford Fire Ins. Co., No. 101808, 1996 WL 395977, at * 8 (Mich. July 16, 1996). In this case, plaintiff received a PRP letter that Michigan law now makes clear constitutes a suit for purposes of triggering insurance coverage. At the time it received the letter, Hi-Mill assumed a defensive posture. As the Michigan Supreme Court recognized in Michigan Millers, prudence requires a PRP in a CERCLA action to participate in the development of the administrative record. 519 N.W.2d at 871.
 
 
 19
 The district court found that Hi-Mill conducted the RI/FS to minimize or absolve itself of liability. 884 F.Supp. at 1117. Indeed, Hi-Mill successfully did so, obtaining a "no-action" record of decision. Accordingly, we conclude that the agency oversight costs of the RI/FS study were expended in defense of the CERCLA action and, therefore, under American Bumper are properly characterized as defense costs.[1]
 
 
 20
 AFFIRMED.
 
 
 
 *
 The Honorable S. Arthur Spiegel, United States District Court for the Southern District of Ohio, sitting by designation
 
 
 [1]
 In defining defense costs, the Michigan Supreme Court in American Bumper distinguished between defense costs and "normally incurred costs of doing business" that were likely to take place even without the advent of an administrative proceeding, 1996 WL 395977, at * 9, and remanded for a determination of which category applied to the various disputed costs. No such remand is required in this case, however, as there is no dispute that the expenses at issue, federal agency oversight costs incurred in conducting the RI/FS, are not an ordinary cost of doing business